## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

SHANTANICE BARKSDALE,

               Plaintiff,           Case No.: 4:21-cv-12729

                                     Hon. Matthew L. Leitman

                                     Mag. Judge Elizabeth A. Stafford

v.

COUNTY OF MACOMB, a Political
Subdivision of the State of Michigan;
DEPUTY MICHAEL GORGES individually
And in his Official Capacity as a Macomb County
Deputy; and
DEPUTY AMANDA BACKERS individually
And in her Official Capacity as a Macomb County
Deputy;

               Defendants.

_____/

## PLAINTIFF'S RESPONSE TO DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

     Plaintiff, Shantanice Barksdale, moves this court to deny Defendants'

Motion for Summary Judgement pursuant to Fed R. Civ. P.56(c) for the following

reasons:

1. Plaintiff admits the allegations contained in paragraph 1 of Defendants

    motion for summary judgement are true.

2. Plaintiff admits the allegations contained in paragraph 2 of Defendants

    motion for summary judgement are true.

3.  Plaintiff denies the allegations contained in paragraph 3 of Defendants motion for summary judgement as untrue.

4.  Plaintiff denies the allegations contained in paragraph 4 of Defendants motion for summary judgement are untrue.

5.  Plaintiff denies the allegations contained in paragraph 5 of Defendants motion for summary judgement are untrue.

6.  Plaintiff denies the allegations contained in paragraph 6 of Defendants motion for summary judgement are untrue.

7.  Plaintiff admits the allegations contained in paragraph 7 of Defendants motion for summary judgement are true.

## **REQUESTED RELIEF**

Plaintiff requests this Honorable Court to deny Defendants' Motion for Summary Judgement pursuant to Fed. R. Civ. P.56 (c) for the reasons contained in this motion and the accompanying brief.


Dated: September 20, 2024                    /s/Ivan L. Land
                                             Ivan L. Land (P65879)
                                             Law Offices of Ivan L. Land, P.C.
                                             25900 Greenfield Rd., Suite 210
                                             Oak Park, MI  48237-1267
                                             248.968.4545 / (f) 248.968.4540
                                             ill4law@aol.com
                                             **Attorney for PLAINTIFF**

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHANTANICE BARKSDALE,

                Plaintiff,                  Case No.: 4:21-cv-12729

                                            Hon. Matthew L. Leitman

                                            Mag. Judge Elizabeth A. Stafford

v.

~~COUNTY OF MACOMB, a Political~~
~~Subdivision of the State of Michigan;~~
DEPUTY MICHAEL GORGES individually
And in his Official Capacity as a Macomb County
Deputy; and
DEPUTY AMANDA BACKERS individually
And in her Official Capacity as a Macomb County
Deputy;

                  Defendants.

## PLAINTIFF'S BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

i

# TABLE OF CONTENTS

*PRIMARY CONTROLLING AUTHORITY* ....................................................... iii

*ISSUES PRESENTED* ...................................................................... iv

*A.   FACTS* ............................................................................... 1

*B.   LEGAL STANDARDS* .......................................................... 4

*C.   ARGUMENT* ........................................................................ 6

*A.   Whether Defendants are entitled to summary judgement on Barksdale's Eighth Amendment excessive force claim because they used de minimis force in a good faith effort to maintain discipline and because there is no evidence of "seriously sufficient" pain ora serious injury* ............................................................................ 6

*B.   Whether Defendants are entitled to Qualified Immunity because the law is not clearly established specific to force used in this case such that the Officers would have known how to conform their conduct.* ...................................................... 15

*CONCLUSION* ............................................................................ 17

# PRIMARY CONTROLLING AUTHORITY

**Cases**

*Burgess v. Fischer,* 735 F.3d 462, 474-75 (6th Cir.2013)........................................12

Ciminillo v. Streicher, 434 F.3d 461, 464 (6th Cir.2006) ........................................4

*Coble v. City of White House*, 634 F.3d 865, 870 (6th Cir.2011) ...........................5

*Cordell* v *McKinney*, 759 F.3rd 573, 580 (6th Cir. 2014) ..................................passim

*Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996)..............................15

*Floyd* v *City of Detroit*, 518 F.3d 398, 406 (6th Cir. 2008) .................................13

*Hoover v. Radabaugh*, 307 F.3d 460, 465 (6th Cir. 2002)....................................15

*Hudson* v. *McMillian*, 503 U.S. 1, 4, 112 S.Ct. 995, 117 L. Ed.2d 156 (1992)...6, 7, 9, 11

*Jackson v. City of Cleveland*, 925 F. 3d 793 ........................................................15

*Lanigan* v *Village of East Hazel Crest* 110 F.3rd 467,478 ...............................14, 15

*McDowell v. Rogers,* 863 F.2d 1302, 1307 (6th Cir.1988) ....................................12

*Moderwell v. Cuyahoga County*, 997 F.3d 653, 660 (6th Cir. 2021)......................16

*Phelps v. Coy,* 286 F.3d 295, 301 (6th Cir.2002) ...................................................12

*Pineda* v *Hamilton County*, 977 F.3rd 483, 493 (6th Cir. 2020)............................13

*Santiago v. Ringle,* 734 F.3d 585, 590 (6th Cir.2013) .............................................8

*Schreiber v. Moe,* 596 F.3d 323, 332 (6th Cir.2010) .............................................12

*Scott v. Harris*, 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686.....................4

*Taylor v Riojas,* S. Ct.52,53, 208 L.Ed.2d 164 (2020)...........................................16

*United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)...................................................................................................................5

*Whitley* v *Albers*, 475 U.S. 312,327 (1986).............................................................7

*Wilkins v. Gaddy,* 559 U.S. 34, 37, 130 S.Ct. 1175, 175 L.Ed.2d 995 (2010)........11

*Williams v. Curtin* 631 F.3d 380, 383 (6th Cir. 2011) ...........................................16

*Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) ......11

**Rules**

Fed.R.Civ.P. 56(a) ...................................................................................................4

## ISSUES PRESENTED

**I.**   **Whether Defendants are entitled to summary judgement on Barksdale's Eighth Amendment excessive force claim because they used de minimis force in a good faith effort to maintain discipline and because there is no evidence of "seriously sufficient" pain or a serious injury.**

Plaintiff states: No
Defendants state: Yes
Court states: No

**II.**   **Whether Defendants are entitled to Qualified Immunity because the law is not clearly established specific to force used in this case such that the Officers would have known how to conform their conduct.**

Plaintiff states: No
Defendant states: Yes
Court states: No

## A.   FACTS

This entire incident was captured on video (See Exhibit 1, Video Footage).
On May 13, 2020, Plaintiff surrendered herself to the Macomb County Jail to begin
serving a 7-month jail sentence. (ECF NO. 25 page ID.139).

On July 17, 2020, Plaintiff complained of chest pains and requested to be
examined by the nurse at the jail. (ECF NO. 25 page ID.140). Plaintiff was
examined by the nurse and it was determined that Plaintiff had normal vitals. (ECF
NO. 25 page ID.140). Plaintiff was released from the nurse's care. (ECF NO. 25
page ID.140).

Plaintiff was escorted back to her cell handcuffed. (ECF NO. 25 page
ID.140). Plaintiff's hands were placed behind her back and handcuffed by
Defendant Gorges and Defendant Backers. (ECF NO. 25 page ID.140). Plaintiff
complained that Defendant Gorges and Defendant Backers cuffed her hands too
tight and thought they were going to break her wrist. (ECF NO. 25 page ID.140).
Plaintiff inquired about why her hands were cuffed so tight and Defendant Backers
stated "because you're twisting your arms on my partner, you turned on him, I just
watched you do it!" (ECF NO. 25 page ID.140).

Plaintiff was so concerned that she stated to Defendant Gorges and
Defendant Backers that, "If you all break my wrist you will not have a job." (ECF
NO. 25 page ID.140). Defendant Gorges and Defendant Backers again accused

Plaintiff of turning her head and suddenly Defendant Gorges and Defendant Backers rammed Plaintiff into a concrete wall forcing Plaintiff to turn her face and brace herself by using her chest and breast to avoid injury to her face. (ECF NO. 25 page ID.140-141). **Less than two feet away from her cell**, Defendant Gorges and Defendant Backers again accused Plaintiff of turning her head and Defendant Gorges then angrily stated " Stop turning your fucking head!" at that same time Defendant Gorges and Defendant Backers rammed Plaintiff into a steel window frame, and again Plaintiff turned her face and braced herself with her chest and breast to avoid injury to her face; however, when Plaintiff turned her head forward, Defendant Gorges punched Plaintiff in the back of the head causing Plaintiff 's face to hit the steel window frame. (ECF NO. 25 page ID.141).

Defendant Gorges received a write up for his actions (Dep. of Defendant Gorges page 5 paragraphs 5-9).

Plaintiff received the following injuries as a result of Defendant Gorges and Defendant Backers' actions:

A. Severe headaches;

B. Broken and fractured teeth;

C. Temporomandibular (T.M.J) disorder;

D. Displaced teeth;

E. Non- Functional bite;

2

**F.** Pain and abscessed teeth;

**G.** Inflamed gingiva; and

**H.** Difficulty and limited opening of the mouth. (ECF NO. 25 page ID.141-142)

 

Plaintiff learned that she would require at least nine procedures/surgeries to attempt to correct the damage done by Defendant Gorges and Defendant Backers. (ECF NO. 25 page ID.142)

While attempting to assist Plaintiff, the nurse looked for Plaintiff's broken tooth on the floor of the jail, Defendant Backers voluntarily stated to the nurse, "the injuries occurred when we went to go turn her on the wall, she smacked her head on the side of here." DEFENDANT BACKERS was pointing to the steel window frame. This statement made by Defendant Backers regarding Plaintiff smacking her head was false. (ECF NO. 25 page ID.142).

Subsequently, Plaintiff was taken to McLaren Macomb Hospital (hereinafter "hospital") to have the injuries evaluated she sustained by Defendant Gorges and Defendant Backers. (ECF NO. 25 page ID.142). Staff at the hospital were told by

3

Defendant Macomb's employee that "this patient reportedly was running out of the unit trying to escape and in the course of restrained she was accidentally pushed into a wall (See Exhibit 1)." (ECF NO. 25 page ID.143)

On July 22, 2020, approximately five days after the initial incident, Plaintiff had to be taken back to the hospital because Plaintiff's facial swelling had gotten worse. (ECF NO. 25 page ID.143). According to hospital staff this visit, Defendant's Macomb's employee told staff the following, "staff at the prison noted that patient did strike her head repeatedly and sustained facial edema thereafter. . . . Per staff at the prison, due to repetitive self-inflicted facial trauma . . . . (See Exhibit 2)." (ECF NO. 25 page ID.143)

## B.   LEGAL STANDARDS

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A genuine issue of material fact exists when there is sufficient evidence for a trier of fact to find for the non-moving party." *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir.2006). Importantly, at this stage in the litigation, we must "view the facts and draw reasonable inferences `in the light most favorable to the party opposing the [summary-judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686

(2007) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)).

"When opposing parties tell two different stories, [however,] one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, [we need] not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Id. at 380, 127 S.Ct. 1769. However, "[f]acts that are not blatantly contradicted by [a video] recording remain entitled to an interpretation most favorable to the non-moving party." *Coble v. City of White House*, 634 F.3d 865, 870 (6th Cir.2011).

## C.   ARGUMENT

**A. Whether Defendants are entitled to summary judgement on Barksdale's Eighth Amendment excessive force claim because they used de minimis force in a good faith effort to maintain discipline and because there is no evidence of "seriously sufficient" pain or a serious injury.**

To address Defendants' first argument regarding whether there has to be "seriously sufficient" pain or serious injury. The U.S. Supreme Court addressed the issue in *Hudson*.

In *Hudson,* Mr. Hudson (prisoner), was placed in handcuffs and shackles, took out of his cell and walked to a lockdown area by Deputy McMillian. While transporting Hudson, the parties had an argument. Deputy McMillian began punching Hudson in the mouth, eyes, chest, and stomach while another guard held Hudson down. (*Hudson* v. *McMillian*, 503 U.S. 1, 4, 112 S.Ct. 995, 117 L. Ed.2d 156 (1992)).  *Hudson* suffered minor bruises and swelling of his face, mouth, and lips. Also, the blows loosened his teeth and cracked his partial dental plate. *Hudson* at 4.

The lower court in *Hudson* – held in favor of *Hudson*. *Hudson* at 4. However, the Fifth Circuit reversed the lower court. *Hudson* at 5.  It held that an inmate alleging use of excessive force in violation of the Eighth Amendment must prove significant injury. *Hudson* at 5.  The court stated that Hudson could not

6

prevail on his Eighth Amendment claim because his injuries were "minor" and required no medical attention. *Hudson* at 5.

In *Hudson*, the U.S. Supreme Court granted certiorari to determine whether the "significant injury" requirement applied by the [Fifth] Court of Appeals in *Hudson* accords with the Constitution's dictate that cruel and unusual punishment shall not be inflicted. *Hudson* at 5.

On reversal of the Fifth Court of Appeals, the *Hudson* court stated that whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley:* whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.  *Hudson* at 7.

 When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. *Hudson* at 7 quoting *Whitley* v *Albers*, 475 U.S. 312,327 (1986).  **This is true whether or not significant injury is evident**. *Hudson* at 9.  Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.  The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it. *Hudson* at 9.

Now that the "significant injury" component has been addressed.  We will now turn to what individuals must prove in an excessive force claim in violation of the Eighth Amendment that being the subjective and objective component. *Cordell* v *McKinney*, 759 F.3rd 573, 580 (6th Cir. 2014) quoting *Santiago v. Ringle,* 734 F.3d 585, 590 (6th Cir.2013).

In *Cordell*, *Cordell* and Deputy McKinney had a disagreement when *Cordell* asked Deputy McKinney to put him on the waiting list for a haircut. *Cordell* at 576.  *Cordell* was placed in handcuffs by Deputy McKinney to be escorted to another floor. *Cordell* at 577. *Cordell* described this position as when your hands are behind your back and somebody tries to raise them up laterally up towards your shoulders. *Cordell* at 577.

With that position, Deputy McKinney began moving *Cordell* in a brisk fashion. There were two other guards walking with Deputy McKinney and *Cordell*. According to *Cordell*, Deputy McKinney started pushing him faster and faster. *Cordell* at 577.  *Cordell* started tensing up in the hallway and Deputy McKinney warned *Cordell* to stop. When *Cordell* failed to face forward, Deputy McKinney placed him against the wall within a hallway out of the view of the camera. *Cordell* received a cut on his forehead and complained of head, neck, and back pains. *Cordell* at 577 and 578.

*Cordell* filed an Eighth Amendment claim stating that Deputy McKinney violated his right to be free of cruel and unusual punishment. Deputy McKinney filed a motion for summary judgment and qualified immunity. *Cordell* at 577.  " [The Fifth Court of Appeals ] found that *Cordell*'s allegations of excessive force were "uncorroborated" and that Deputy McKinney was justified in using the amount of force that he did." The court granted the Deputy's motion for summary judgment and qualified immunity.  *Cordell* at 579.  This court reversed the Fifth Court of Appeals court's decision.  *Cordell* at 580.

In *Cordell*, the court analyzed the subjective component and an objective component for an Eighth amendment claim.

The subjective component focuses on the state of mind of the prison official. *Cordell* at 580.   The *Cordell* court looked at the ruling in the *Hudson* case - whether force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically to cause harm. *Cordell* at 581.

*Cordell* stated first, there is the severity of Cordell's injuries. The record indicates that *Cordell* suffered a laceration, that the laceration bled on the wall, on the hallway floor, and on Cordell's face. *Cordell* at 582.  Similar to *Cordell*, Plaintiff in this matter was rammed into a concrete wall and received a fractured tooth and a laceration on her lip that required medical attention. (ECF 25, Page157).

*Cordell* stated second, it is difficult to reconcile the threat that Cordell's turn toward Deputy McKinney presented to the deputy, other prison officials, other inmates, or outside individuals with the amount of force that Cordell claims that Deputy McKinney used. *Cordell* at 583. *Cordell*'s arms were cuffed behind his back, and Deputy McKinney had *Cordell* in a submission hold. *Cordell* at 583. Like *Cordell*, Plaintiff in this matter was cuffed behind her back. (ECF 25 PageID. 157). She was not causing any disturbance to the jail officials or other inmates. There was no need to use the amount of force that was used on Plaintiff.

*Cordell* stated third, there is no evidence in the record that Deputy McKinney made any effort to moderate the force he used against *Cordell* except his bare assertion that he "used the minimum amount of force necessary to control ... Cordell."  Deputy McKinney's fellow officers described him as "forcibly escort[ing]" *Cordell*, and "escort[ing] him ... in an aggressive manner, " Deputy McKinney had to be "asked twice ... to calm down." *Cordell* at 584. Moreover, when the deputy failed to do so and his "agitated state" continued, Sgt. Jones "relieved Deputy McKinney.  Additionally, Deputy McKinney accepted "a written [warning] for excessive use of force" from the Sheriff's Department as a result of this incident. *Cordell* at 584.

10

Once again, the facts similar to this present case. Defendant Gorges was in a very agitated state. At one point, he stated to Plaintiff "stop turning your fucking head." (ECF NO. 25 page ID.141).

Finally, like the defendant in *Cordell*, Defendant Gorges received a write up for his actions (Dep. of Defendant Gorges page 5 paragraphs 5-9).

The *Cordell* court stated that, given the three factors, we conclude that a reasonable jury could find that Deputy McKinney's use of force was not a good-faith effort to restore control of *Cordell*, but rather a malicious and sadistic attempt to inflict injury. *Cordell* at 584.

The facts of *Cordell* are identical to this present matter, therefore, as concluded in *Cordell*, a reasonable jury could find that Defendants' use of force was not a good-faith effort to restore control of Plaintiff, but rather a malicious and sadistic attempt to inflict injury.

Next, we will analyze the objective component.

> "The objective component requires the pain inflicted to be `sufficiently serious.'" *Williams,* 631 F.3d at 383 (quoting *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy,* 559 U.S. 34, 37, 130 S.Ct. 1175, 175 L.Ed.2d 995 (2010). **"When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated ... [w]hether or not significant injury is evident."** *Hudson* at 9.

11

[The U.S. Supreme Court] has held in the past that **"striking a neutralized suspect who is secured by handcuffs is objectively unreasonable."** *Cordell* at 585 quoting *Schreiber v. Moe,* 596 F.3d 323, 332 (6th Cir.2010); *Burgess v. Fischer,* 735 F.3d 462, 474-75 (6th Cir.2013). The record shows that *Cordell* was handcuffed by Deputy McKinney in a submission hold.  While *Cordell* admitted turning toward Deputy McKinney, **we doubt that slamming a handcuffed and controlled prisoner headfirst into a concrete wall comports with human decency.** *Cordell* at 586 quoting *Burgess,* 735 F.3d at 474-75 (citing *Phelps v. Coy,* 286 F.3d 295, 301 (6th Cir.2002); *McDowell v. Rogers,* 863 F.2d 1302, 1307 (6th Cir.1988)).

In *Cordell*, the court stated that "a jury would not be unreasonable in concluding that Deputy McKinney's use of force was an entirely unnecessary and disproportionate response to *Cordell* turning toward the deputy and violated contemporary norms." *Cordell* at 586.

Plaintiff in this matter was handcuffed behind her back and as held in *Cordell*, striking an individual secured by handcuffs is objectively unreasonable. Despite the fact that Plaintiff was turning her head toward Defendants - slamming Plaintiff into a concrete wall while handcuffed and controlled does not comports to human decency.

12

*Cordell* further stated that the injuries *Cordell* suffered were rather significant requiring medical attention. *Cordell* at 586.  Therefore, *Cordell*'s injuries were more than a minor cut and more than de minimis injuries as Deputy McKinney's.  *Cordell* at 586.  As a result, a jury would not be unreasonable in finding that these injuries indicate that *Cordell* suffered serious pain, satisfying the objective component of his Eighth Amendment claim. *Cordell* at 586.

Once again, Plaintiff in this matter had more than minor cuts and de minimis injuries as Defendants attempt to argue. Plaintiff had to be taken to McLaren hospital and was diagnosed with a fractured tooth and a laceration on her lip requiring sutures. (ECF 25 Page ID. 157). As in *Cordell*, a jury would not be unreasonable in finding that these injuries indicates that Plaintiff suffered serious pain, satisfying the objective component of her Eighth Amendment claim.

Next, Defendants argued that although Defendant Backer was involved in the second push, she did not cause Plaintiff's injury.  Defendants cited *Floyd* which held that, "An officer is liable for failure to intervene if she had a reason to know that excessive force would be or was being used and has the opportunity and the means to prevent the harm from occurring. *Floyd* v *City of Detroit*, 518 F.3d 398, 406 (6th Cir. 2008). An excessive use of force lasting ten seconds or less does not give a defendant enough time to preserve the incident and intervene to stop such force "*Pineda* v *Hamilton County*, 977 F.3rd 483, 493 (6th Cir. 2020).

13

Defendant Backers argues that because there was no time to react to the split-second reflective response by Defendant Gorges that caused Plaintiff's injuries, Defendant Backers is not liable for Plaintiff's resulting injury.

Defendant Backers is not taking into account that not only was the blow delivered by Defendant Gorges that caused Plaintiff's fractured tooth and the laceration on her lip, excessive force was displayed when Plaintiff was rammed into the concrete wall.  Defendant Backers admitted in her deposition that she placed Plaintiff against the wall (See Dep. Of Deputy Backers page 12, line 12).

Plaintiff was in such pain that she attempted to threatened both Defendants that if you break my wrist, you will not have a job", but to no avail (See ECF No. 25, Page ID 140).

Furthermore, and more importantly, even if this court were to find that the ramming into the wall is not excessive force, this court has made it clear that the prong of this analysis almost always implicates **questions of fact for a jury to decide**.

In *Lanigan*, the court held, "Whether an officer has sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally **an issue for the trier of fact** unless considering all of the evidence, a reasonable jury could not possibly conclude otherwise. *Lanigan* v *Village of East*

14

*Hazel Crest* 110 F.3rd 467,478.  Therefore, the issue of failure the intervene is a question of fact for the jury to decide.

Defendant backer was asked in her deposition "Did you do anything to stop him from placing her against the wall?" and "Did you say anything to him about don't place her against the wall?" she responded "no". (See Deposition of Defendant Backer page 25, lines 19-24).

### B. Whether Defendants are entitled to Qualified Immunity because the law is not clearly established specific to force used in this case such that the Officers would have known how to conform their conduct.

Qualified immunity does not apply if (1) "on the plaintiff's facts," a constitutional violation occurred, and (2) the alleged violation was of "clearly established constitutional rights of which a reasonable person would have known." *Jackson v. City of Cleveland*, 925 F. 3d 793 - Court of Appeals, (6th Cir. 2019) quoting *Hoover v. Radabaugh*, 307 F.3d 460, 465 (6th Cir. 2002) (*Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996)

Defendants failed to address in their argument whether a constitutional violation occurred, so that prong is abandoned.  Still, Plaintiff will address this prong whether a constitutional violation occurred. Plaintiff will rely again on *Cordell*, where that court held that, " Prison officials violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton

15

infliction of pain." *Cordell* at 580 quoting *Williams v. Curtin* 631 F.3d 380, 383 (6th Cir. 2011). *Cordell* ruled that there was a constitutional violation that occurred. *Cordell* at 588.

The facts in *Cordell* are identical to this present case. Plaintiff was handcuffed and rammed into a concrete wall when turning towards the officer causing injury. Therefore, in this present matter Plaintiff has established that a constitutional violation occurred.

Defendants argue that the court must determine whether the law was clearly established in July of 2020 that pushing a secured but actively resisting inmate against a wall to prevent her from turning to face the officers who were concerned about contracting COVID violated the Eighth Amendment's prohibition against Cruel and Unusual Punishment.

In *Taylor*, the court Supreme Court held that when the conduct of a government official is so egregious that a constitutional violation is apparent, the Supreme Court **does not** require that a case be "directly on point" to satisfy the "clearly established" prong of the qualified-immunity analysis. *Taylor v Riojas,* S. Ct.52,53, 208 L.Ed.2d 164 (2020) quoting *Moderwell v. Cuyahoga County*, 997 F.3d 653, 660 (6th Cir. 2021).

Pursuant to the Supreme Court's holding in *Taylor*, Defendants' arguments fail. Prior court rulings involving COVID are not required to establish the "clearly

16

established" prong as Defendants want this court to believe. Therefore, since the facts of this present case are the same as *Cordell* and *Cordell* established that the 'clearly established' prong was met, Plaintiff has also established that the 'clearly established' prong is satisfied.

Furthermore, and more importantly, Defendants' argument regarding preventing COVID is disingenuous. Defendant Backers testified in her deposition, "I wasn't really necessarily afraid of COVID because I don't remember if I had COVID, you know, before that or not." (See Dep. of Defendant Backers Page 40, lines 11-13).

Also, Defendant Gorges testified in his deposition, "Barksdale was put against the wall to gain control of the situation and to avoid being spit at." (See Dep. of Defendant Gorges page 13, lines 1-2).

Finally, neither Defendant stated in their reports immediately following the incident that they were concerned about contracting COVID (See Exhibit 2, Backers' Report and Exhibit 3, Gorges' Report).

## CONCLUSION

For the above stated reasons, Plaintiff asks this Honorable Court to deny Defendants' Motion for Summary Judgment.

Dated: September 20, 2024

17

/s/Ivan L. Land
Ivan L. Land (P65879)
Law Offices of Ivan L. Land,
P.C. 25900 Greenfield Rd.,
Suite 210 Oak Park, MI 48237-
1267 248.968.4545 / (f)
248.968.4540 ill4law@aol.com
**Attorney for PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Brief in Support Of Plaintiff's Response to Defendants' Motion to Dismiss and for Summary Judgment with the Court Clerk via CM/ECF on September 20, 2024, to serve all parties.

/s/Ivan L. Land
Ivan L. Land